# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER COSTIN                                    CIVIL ACTION

VERSUS                                                         16-873-SDD-RLB

GOTECH, INC.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, GOTECH, Inc. ("GOTECH").  Plaintiff, Christopher Costin ("Costin"), has filed an *Opposition*[2] to this motion, to which GOTECH filed a *Reply,*[3] and Costin filed a *Sur-Reply.*[4]  For the following reasons, the Court finds that GOTECH's motion should be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

GOTECH is a professional engineering and consulting firm that primarily provides civil engineering, surveying, and inspections services.[5]  In 2012, Costin applied for a job with GOTECH after his half-brother Todd Silvio ("Silvio"), who was employed by GOTECH, advised him of this job opportunity.[6]  Costin was hired by GOTECH in 2012 as a Field Inspector[7] in connection with inspection services that GOTECH was contracted to

---

[1] Rec. Doc. No. 19.
[2] Rec. Doc. No. 22.
[3] Rec. Doc. No. 26.
[4] Rec. Doc. No. 30.
[5] Rec. Doc. No. 19-2, ¶ 1.
[6] *Id.* at ¶ 4.
[7] *Id.*, ¶¶ 1, 5.

46305

provide for Baton Rouge's Sanitary Sewer Overflow Program ("SSO Program"). The SSO Program is partly managed by CH2M HILL, the project manager for the City/Parish.[8] Costin was initially placed under Silvio's supervision for the SSO Program projects.[9] At the time, Silvio was a senior inspector for GOTECH. Silvio reported to Robert Dugas ("Dugas") who reported directly to GOTECH President Rhaoul Guillaume ("Guillaume").[10]

GOTECH submits that field inspectors are responsible for observing, recording, and reporting the contractor's activities and progress at a particular job site.[11] Field inspectors are then required to submit a daily report documenting their observations on the job site and identifying any deficient or nonconforming work.[12] GOTECH contends field inspectors are required to appear at their assigned location, and they have no discretion in determining priorities among different job sites.[13] Further, GOTECH claims field inspectors are not required to know or report OSHA violations.[14]

The daily reports prepared by GOTECH inspectors are submitted to the construction managers assigned to the job sites.[15] During his employment, the construction managers for the job sites assigned to Costin were employees of CH2M HILL, and neither CH2M HILL nor its employees are affiliated with GOTECH.[16] GOTECH contends it is within the construction manager's authority – not GOTECH's – to report to the contractors any nonconforming work identified by the field inspectors, and the

---

[8] *Id.* at ¶ 3.
[9] *Id.* at ¶ 5.
[10] *Id.* at ¶ 6.
[11] *Id.* at ¶ 7.
[12] *Id.* at ¶ 8.
[13] *Id.* at ¶ 9.
[14] *Id.* at ¶ 10.
[15] *Id.* at ¶ 11.
[16] *Id.* at ¶¶ 12-13.

46305

contractors determine whether the work needs remediation or whether the contractor should be paid.[17]

On October 21, 2013, Costin was assigned to work at the South Waste Water Treatment Plant.[18] While assigned at this plant, Costin remained an employee of GOTECH but reported directly to employees of CH2M HILL, including Rob Lorentz, a lead inspector.[19] Following this job assignment, the formerly "harmonious" working relationship between Costin and GOTECH became strained.[20] Costin claims that he "began to uncover a disturbing pattern of behavior and other activities by low and high-level employees or representatives of GOTECH, as well as other subcontractors and contractors" working on these projects that constituted violations of state and federal laws.[21]

A major dispute arose regarding two days in April 2014 for which Costin failed to submit daily reports. Although records show Costin worked on April 4 and April 5, 2014, GOTECH claims he failed to submit daily reports for both days.[22] This failure prompted both Silvio and Dugas to ask Costin several times to provide daily reports for these days.[23]

Costin contends GOTECH "badgered" him for over four months, insisting that he manufacture daily reports for these two days in April.[24] Costin further claims that he advised GOTECH that it would be impossible to replicate the reports after the fact; thus, GOTECH knew the only way Costin could create the reports was by fabricating them.

---

[17] *Id.* at ¶ 14.
[18] *Id.* at ¶ 15.
[19] *Id.* at ¶ 16.
[20] Rec. Doc. No. 1-1, ¶¶ C-3, C-4.
[21] Rec. Doc. No. 22 at 1-2.
[22] Rec. Doc. No. 19-5 at 4.
[23] *Id.* at 35–37.
[24] Rec. Doc. No. 22 at 7.

46305

Costin also alleges that GOTECH told him to "dumb down" his reports and omit certain details or safety concerns in some reports. Costin claims that, while he was initially praised for his detailed daily reports, this same attention to detail was causing problems between GOTECH and the constructions managers/contractors; thus, Costin was told to tone down his reporting to ease the tensions within the SSO Program.[25]

GOTECH contends that no one at GOTECH ever asked Costin to falsify or fabricate daily reports for these days; rather, he was requested to prepare reports based on the notes and photographs he took on those dates as part of his job duties.[26] Dugas testified that, although GOTECH paid Costin for these two days, at some point, Costin told Dugas that he didn't work those days.[27] Dugas further testified that Costin was paid for these days, and he was not sanctioned for this failure.[28]

GOTECH also claims Costin never advised that he believed these requests for daily reports were illegal.[29] GOTECH further claims that no GOTECH employee ever asked Costin to "dumb down," falsify, or omit details in his daily reports.[30] GOTECH does, however, admit that Costin was given tips on how to write his reports in a more professional manner without including his own personal opinions.[31]

Problems with Costin continued as GOTECH claims he showed up two hours late to his assigned worksite on July 8 and July 11, 2014.[32] Costin claimed he worked these

---

[25] *Id.*
[26] Rec. Doc. No. 19-3 at 21-25.
[27] *Id.* at 20.
[28] *Id.* at 19.
[29] Rec. Doc. No. 19-5 at 5.
[30] Rec. Doc. No. 19-3 at 39; Rec. Doc. No. 19-7 at 7, 12-14.
[31] Rec. Doc. No. 19-6 at 4-5; Rec. Doc. No. 19-7 at 4-5.
[32] Rec. Doc. No. 19-5 at 6.

46305

four hours, but he went to an unassigned location before going to his assigned location.[33] Costin was issued an Employee Warning Notice for working in an unassigned area and arriving late to his assigned location,[34] and Costin was docked four hours of pay.[35] Costin maintains that he was "punished" for reporting nonconforming work at Pump Station 275 after he was told an inspector was needed for that station. Because he went to this location, Costin claims he was docked four hours of work although he was only gone for two. In response to the docked hours, Costin emailed GOTECH senior management, called the warning "bogus," and requested that he be paid for the four hours of work.[36] Dugas denied Costin's request.[37]

On August 1, 2014, Costin emailed Dugas and several other GOTECH personnel, but directed his message to Silvio.[38] In this email, Costin claimed that Silvio had "been allowed to threaten me, curse me, slander me, and get away with prohibited harassment," and Costin asked that it stop.[39] Costin referenced labor laws protecting employees from "this kind of abuse," and then ostensibly threatened to go to the Department of Labor, the news media, or the Attorney General's Office.[40] The email ended with "Stop The Harassment."[41]

Despite this email, GOTECH claims it sided with Costin every time he encountered a conflict on the job. Costin's email referenced a dispute between himself and Wayne

---

[33] *Id.*
[34] *Id.* at 39.
[35] *Id.* at 40.
[36] *Id.* at 41, 43.
[37] *Id.* at 40.
[38] *Id.* at 43.
[39] *Id.*
[40] *Id.*
[41] *Id.*

46305

Durham ("Durham"), a supervisor for contractor Grady Crawford. Durham had become angry with Costin and allegedly threatened him at a worksite for identifying nonconforming work. This incident occurred on June 20, 2013. GOTECH sided with Costin after this incident, and Dugas testified that he advised Durham "that the manner in which Mr. Costin said that he approached him was improper; that if he had an issue with one of the field inspectors under GOTECH, that he needed to contact me directly and, and not the way he did that day with Mr. Costin."[42] Another incident occurred in June 2014 when a worksite foreman told Costin he would "take that camera and shove it up your ass."[43] GOTECH contends it again backed up Costin, and the foreman was fired or removed from the worksite.[44]

Although Costin insists that he notified GOTECH of several violations of labor laws, GOTECH claims Costin never notified GOTECH of any illegal activities[45] prior to the statement in his August 1, 2014 email.[46] After the August 1 email, Costin, Dugas, Silvio, and Macaluso agreed that Costin should be reassigned from Silvio to Macaluso,[47] effective August 4, 2014, and Costin testified that he was happy with this reassignment.[48] Immediately, Costin requested time off on August 4 and August 6, 2014, and this request was granted.[49] Dugas emailed Costin on August 5, 2014 to advise him that there was no assignment for Costin on this date because several of Macaluso's projects were "winding

---

[42] Rec. Doc. No. 19-3 at 32 (Deposition of Dugas, p. 215, lines 16-21).
[43] Rec. Doc. No. 19-7 at 3 (Deposition of Silvio, p. 44, lines 4-5).
[44] *Id.*
[45] Rec. Doc. No. 19-3 at 40; Rec. Doc. No. 19-6 at 10-11; Rec. Doc. No. 19-7 at 9-10.
[46] Rec. Doc. No. 19-5 at 43.
[47] Rec. Doc. No. 19-3 at 27.
[48] Rec. Doc. No. 19-5 at 12.
[49] *Id.* at 42.

46305

down."[50]  Costin ultimately sent an email to Macaluso advising that he had no choice but to file a complaint with the Department of Labor over the four docked hours and name Macaluso as a witness.[51]

On August 6, 2014, Macaluso emailed Costin to advise that he had work on August 7; however, Costin declined the work assignment and requested time off from August 7 to August 10, 2014.[52]  Although Costin was again granted leave for a doctor's appointment on August 13, 2014,[53] he worked a full 40-hour work week with overtime the week of August 11, 2014.[54]  Macaluso advised Costin that he had no field assignments for him the week of August 17, 2014, but Costin could report to the office for other routine responsibilities.  Costin declined this offer of work.[55]

Costin requested a meeting with GOTECH management to address the four hours of docked pay and the alleged unlawful conduct he had observed.  On Monday, August 25, 2014, Costin met with GOTECH President Guillaume and GOTECH manager Mike Maillet.  A memo prepared by GOTECH after this meeting reflects that Costin complained about his hours, advised that he had hired a law firm, acknowledged that work was offered to him the previous week which he declined, and advised that he was too upset to return to work.[56]

Costin claims that, at this meeting, he was verbally harassed by Mike Maillet as he had previously been by other GOTECH management.[57]  Costin further claims that

---

[50] *Id.*
[51] Rec. Doc. No. 22-3 at 15-16.
[52] Rec. Doc. No. 19-5 at 12-13, 50.
[53] Rec. Doc. No. 19-6 at 14.
[54] *Id.* at 13.
[55] Rec. Doc. No. 19-5 at 51.
[56] *Id.* at 52.
[57] Rec. Doc. No. 22-10.

46305

GOTECH continued to violate the law by intentionally inflicting emotional distress upon Costin and, ultimately, Costin claims the continued harassment resulted in his constructive discharge.[58]

On August 28, 2014, Costin did not report to work but sent a text message to Macaluso stating that he was going to the doctor because he felt like he was having a heart attack.[59] Costin later advised Macaluso that it was just a panic attack and demanded the money and hours "they cheated me out of."[60] Although Costin texted Macaluso that he would report to work on August 29, he never reported to work.[61] According to Costin, the workplace harassment became so prevalent that his mental and emotional conditions were severely impacted, forcing him to request FMLA leave.[62]

GOTECH sent Costin a letter on August 28, 2014 stating that it returned two of the four hours of pay he was docked, but it also stressed that he report to the correct worksite in the future: "any failure to report to your *assigned* location in the future will lead to disciplinary action up to and including termination."[63] On August 30, 2014, Costin emailed GOTECH and asked how to take leave under the Family and Medical Leave Act ("FMLA").[64] GOTECH provided Costin with FMLA paperwork and emailed him on September 18, 2014 advising that he must provide a doctor's release stating he was medically fit to perform his field inspector duties before he would be allowed to return to

---

[58] Rec. Doc. No. 22-11 at 1-3. The Court notes that GOTECH did not address Costin's claims of intentional infliction of emotional distress or constructive discharge.
[59] Rec. Doc. No. 19-5 at 57-62.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.* at 53 (emphasis original).
[64] *Id.* at 56.

46305

work.[65]  Costin responded that he believed his FMLA paperwork to be a release but requested that GOTECH provide his doctor with a written description of his field inspector job duties so his doctor could provide a full release.[66]  On September 22, 2014, via letter, GOTECH provided Costin with his FMLA paperwork, which notified Costin that his FMLA leave began on August 23,2014,[67] and a copy of the fax sent to Dr. Billy May "(Dr. May") regarding Costin's physical job requirements.[68]  The entitled "Physical Requirements for Field Inspectors:" included the following:

- Arrive on the job at 6:30-7:00 A.M. ready to work 8 to 10 hours
- Working outdoors on roadways or construction site
- Carrying light equipment (measuring tools, camera, lap top, etc.)
- Climbing – inclines & down into enclosed areas
- Significant amount of walking each day (2-3 miles)
- Balancing in unleveled conditions
- Driving between project sites[69]

GOTECH claims Dugas created this list of physical requirements because Dr. May requested it, and no such list existed before this request because the SSO Program's job description did not include physical requirements.  Thus, GOTECH contends Dugas created this list "in a good faith attempt to paint a realistic picture of what may be physically required of a field inspector."[70]

Dr. May evaluated Costin on September 23, 2014 and subsequently faxed a letter to GOTECH advising that he was released to return to work on September 30, 2014 "without any restrictions at all to his previous functions for Field Inspector."[71]  Dr. May

---

[65] *Id.* at 63.
[66] *Id.*
[67] *Id.* at 65-66.
[68] *Id.* at 71.
[69] *Id.*
[70] Rec. Doc. No. 19-2, ¶ 59.
[71] Rec. Doc. No. 19-8 at 11.
46305

testified that, as of September 23, 2014, Costin was able to complete these physical requirements.[72]

Having received this release, Macaluso emailed Costin about available work on September 30, 2014, but Costin never responded.[73] Costin claimed he could not perform the "new" physical job requirements.[74] On October 7, 2014, GOTECH wrote to Costin and advised that "[t]he field that you were hired for and have been working for the past 2 years, is the job that you are being asked to perform."[75] The letter further advised Costin that he had been released to return to work on September 30, 2014 without any restrictions but that, since Costin claimed he was unable to return to work because he could not perform these essential job functions, GOTECH would consider him still on FMLA leave. Costin was advised to contact GOTECH and provide a release when he was fully able to return to work.[76] Costin admitted that, after receipt of this letter, he never asked GOTECH for any accommodations that would allow him to return to work.[77]

Costin's twelve weeks of FMLA leave expired on November 15, 2014.[78] Yet, on November 16, 2014, Costin emailed GOTECH and advised that his doctor still would not release him to perform the physical job requirements sent by GOTECH.[79] Acknowledging that his FMLA benefits had expired, Costin inquired "what happens to my position and insurance now?"[80] GOTECH responded that, since it had allowed Costin to use all of his

---

[72] *Id.* at 3-4.
[73] Rec. Doc. No. 19-5 at 73.
[74] Rec. Doc. No. 22-14 at 4.
[75] Rec. Doc. No. 19-5 at 74.
[76] *Id.*
[77] *Id.* at 33.
[78] Rec. Doc. No. 19-9 at 1.
[79] *Id.* at 2.
[80] *Id.*
46305

FMLA leave, and Dr. May had released him to return to work without restrictions, he must report to work on November 24, 2014 or GOTECH would consider his job abandoned and it would replace him.[81]  When Costin failed to report on November 24, GOTECH wrote Costin on November 25, 2014 advising that he was terminated as of November 25, 2014.[82]

Following his termination, Costin filed this lawsuit against GOTECH in state court alleging violations of The Louisiana Whistleblower Statute,[83] the Family and Medical Leave Act,[84] and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").[85]  Costin contends that, because of the alleged ongoing retaliation and harassment that was causing him emotional distress, he was required to request FMLA leave in August of 2014.  Costin maintains that this harassment and retaliation was in response to his threats to disclose and report GOTECH's conduct to the media and legal authorities.  Costin argues that this retaliation continued in that he had "prior, well-known accommodations summarily removed and the physical job requirements of his prior position modified to require more than was required of any other Field Inspector."[86]  Thus, as he was unable to return to work with the alleged "new" physical requirements, which he argues were added by GOTECH without explanation, Costin never reported back to work.  Costin contends his medical records and Dr. May's testimony demonstrate the

---

[81] *Id.* at 1.
[82] Rec. Doc. No. 19-5 at 75.
[83] La. R.S. 23:967.
[84] 29 U.S.C. § 2615.
[85] La. R.S. 51:1409.
[86] Rec. Doc. No. 22 at 2.
46305

severity of emotional distress he suffered as a result of GOTECH's harassment, which required both medication and therapy.[87]

GOTECH removed this matter to federal court and now moves for summary judgment, arguing that Costin's whistleblower and LUTPA claims have prescribed and are substantively without merit, and his FMLA claims are without merit.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[88]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[89]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[90]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[91]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a

---

[87] Rec. Doc. No. 22-15 at 10-11.
[88] Fed. R. Civ. P. 56(a).
[89] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[90] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[91] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
46305

scintilla of evidence."[92]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[93]  All reasonable factual inferences are drawn in favor of the nonmoving party.[94]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[95]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[96]

### B.  Louisiana Whistleblower Statute

The Louisiana Whistleblower Statute prohibits an employer from taking reprisal against an employee who, in good faith, and after advising the employer of a violation of law, objects or refuses to participate in an employment practice that is in violation of law.[97] The statute requires that an employee prove an *actual* violation of state law in order to prevail.[98]  Furthermore, an employee's reasonable belief that an employer's acts or

---

[92] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[93] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[94] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[95] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[96] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[97] La. R.S. 23:967.

[98] *Becnel v. Department of Social Services, Office of Comm Svcs*, No. 09-988-B-M2, 2011 WL 2416259 at *9 (M.D. La. May 20, 2011)(citing *Price v. B & B Transport Services, Inc.*, 2006–1482 (La . App. 1 Cir. 5/4/07), 2007 WL 1300932 (citing other Louisiana state appellate court decisions holding similarly); *Wells v. City of Alexandria*, 2004 WL 909735 (5th Cir.2004))(emphasis added).

46305

practices are unlawful is insufficient to state a claim under La. R.S. 23:967.[99]  Louisiana state appellate courts hold that "[t]he statute targets *serious* employer conduct that violates the law."[100]

Costin alleges in his petition that GOTECH violated state law in the following ways: (1) aiding contractors in defrauding Louisiana and DPW Public Words Contracts; (2) suppressing and/or attempting to suppress OSHA safety violations; (3) suppressing and/or attempting to suppress violations of State Public Works Contracts; (4) suppressing and/or attempting to suppress improper construction, installation, or maintenance to various public works; (5) endangering the public by failing to provide proper inspection and/or oversight to public works projects; (6) failing to correct known safety violations which led to the eventual death of Jassiah Clark; and (7) other unlawful acts to be proven at trial.[101]  GOTECH contends the majority of these claims are time-barred.

### 1. Prescription

GOTECH maintains that it is entitled to summary judgment on Costin's whistleblower claim because all alleged violations have prescribed as a matter of law. The statute does not specify a prescriptive period; thus, it is subject to the general one-year prescriptive period for delictual actions set forth in La. C.C. art. 3492.[102]  Costin filed this lawsuit on November 20, 2015.  Thus, any whistleblower claim under La. R.S. 23:967

---

[99] *Id.* (citing *Puig v. Greater New Orleans Expressway Comm'n*, 2000–924 (La.App. 5th Cir.10/31/00), 772 So.2d 842, *writ denied*, 2000–3531 (La.3/9/01), 786 So.2d 731).

[100] *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813 (La. App. 1 Cir. 12/23/15), 186 So.3d 185, 187 (citing *Fondren v. Greater New Orleans Expressway Com'n*, 03–1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, 691)(emphasis added).

[101] Rec. Doc. No. 1-1 at 8.

[102] *Lefort v. Lafourche Parish Fire Protection Dist. No. 3*, 39 F.Supp.3d 820, 826 (E.D. La. 2014)(citing *Johnson v. Harrah's Entm't, Inc.*, CIV.A. No. 04–331, 2005 WL 3541139, at *5 (E.D.La. Nov. 16, 2005) (citing *Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 790 So.2d 725, 733 (La.Ct.App.2001))).
46305

based on an alleged act of retaliation that occurred prior to November 20, 2014 has prescribed.

GOTECH claims the only events that occurred after November 20, 2014 were Costin's last chances to appear for work following the expiration of his FMLA leave, and ultimately, his termination effective November 25, 2014. As such, GOTECH contends Costin's sole act of alleged retaliation within the prescriptive period is his termination on November 25, 2014.

Costin acknowledges this one-year prescriptive period but argues that the "continuing tort doctrine" extends the prescriptive period since the last incident of a repeated, continuous period of harassment was his termination on November 25, 2015. Costin contends that the retaliatory acts against him were "continuous, by the same actor, of the same nature, and cumulated with" his termination.[103]

It is true that the continuing violations doctrine,[104] an equitable exception to the one-year prescriptive period, may apply "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."[105] This doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."[106] "The focus is on what event, in fairness and logic,

---

[103] Rec. Doc. No. 22 at 13 (citing *Bustamento v. Tucker*, 607 So.2d 532, 534 (La. 1992)).
[104] This term is also commonly referred to as the "continuing tort doctrine."
[105] *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989) (quoting *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir.1986)).
[106] *Messner v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997).
46305

should have alerted the average lay person to act to protect his rights."[107] The Fifth Circuit has instructed:

> [a]lthough there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.[108]

GOTECH contends Costin cannot benefit from the continuing tort doctrine because he knew his rights were allegedly being violated but failed to act in a timely manner to assert those rights. GOTECH cites this Court's opinion in *Price v. PCS Nitrogen Fertilizer, L.P.*,[109] wherein the plaintiffs sought application of the continuing tort doctrine for their Louisiana Whistleblower claims. Noting that the plaintiffs had consulted an attorney in anticipation of litigation and were "clearly aware of their rights" up to one year prior to the date they filed suit, the Court held:

> Given these facts, and the equitable underpinnings of the continuing tort and continuing violation doctrines, this Court refuses to invoke the doctrines to benefit those who knew their rights were being violated and yet did not act in a timely manner to assert those rights. For the Court to now allow plaintiffs to invoke the continuing violation theory to save claims arising from conduct occurring prior to January 27, 2002, would effectively read the limitations periods out of La. R.S. 30:2027 and 23:967. Such a result is untenable.[110]

GOTECH contends that the record demonstrates that Costin was making allegations of harassment against GOTECH as early as April 2014, and he hired at attorney around August of 2014,[111] yet he failed to timely assert these rights.

---

[107] *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir.1985) (internal citations and quotations omitted).

[108] *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.1998) (internal citations omitted).

[109] No. 03-153-RET-DLD, 2010 WL 1005181 (M.D. La. Mar. 15, 2010).

[110] *Id.* at *6.

[111] *See* Rec. Doc. No. 19-5 at 18.

46305

Costin unsuccessfully attempts to distinguish *Price* from the present case, suggesting that he was not aware of his legal recourse and arguing that he did not hire a law firm in August of 2014 but, rather, "sought very specific legal advice from one as it pertained to GOTECH docking four hours of Costin's pay …"[112]  Costin further argues that he never sought legal advice pertaining to any legal recourse he might ultimately have in the future.[113]  This argument is not only unsupported by evidence in the record, it is, in fact, undermined by very clear evidence demonstrating Costin's familiarity with his legal rights and his belief that he had been subjected to actionable harassment.   The August 1, 2014 email leaves no doubt that Costin believed he had been subjected to actionable harassment, and he referenced his "knowledge" of laws protecting employees from this type of conduct.  Costin's email stated that Silvio had been allowed to get away with "prohibited harassment"; that "[t]here are labor laws that protect workers from this kind of abuse"; threatened to go to the Department of Labor and the State of Federal Attorney Generals [sic] Office; and finally concluded with "Stop The Harassment."  And, it is undisputed that this email was sent in the same month that Costin "sought very specific legal advice" from a lawyer.   Accordingly, the continuing tort doctrine is unavailable to Costin's claims of harassment.

Further, courts have repeatedly distinguished retaliatory termination from a harassment/hostile work environment claim.  The Fifth Circuit has expressly held that the continuing violations doctrine does not apply to claims of retaliation because "retaliation is, by definition, a discrete act, not a pattern of behavior."[114]

---

[112] Rec. Doc. No. 30 at 4.
[113] *Id.*
[114] *Hamic v. Harris Cnty., W.C. & I.D. NO. 36*, 184 F. App'x 442, 447 (5th Cir. 2006).
46305

While Costin alleges a continuous retaliatory pattern of harassment, he acknowledges that the lone allegedly retaliatory action falling within the limitations period is his termination on November 25, 2014. Accordingly, the Court finds that the continuing violations doctrine is inapplicable to Costin's whistleblower claims and, as such, claims relating to any conduct occurring prior to November 20, 2014 are prescribed. The Court turns to a discussion of the substantive merits of Costin's only viable whistleblower claim – retaliatory termination.

2. <u>Actual Violations of State Law/Threat of Disclosure</u>

Costin argues GOTECH violated Louisiana state laws in several ways. First, Costin argues that GOTECH's "blanket contention" that it was not GOTECH's duty to correct nonconforming work or ensure remedial actions is a violation of GOTECH's contractual obligations "to the public" via GOTECH's contract with the Department of Public Works.[115] Costin contends this breach of contract violates state law; yet, no particular law is identified. Next, Costin claims GOTECH committed public payroll fraud in violation of La. R.S. 14:138.[116] Costin contends he "endlessly stressed" to GOTECH that its failure to act to see that nonconforming work was corrected exposed the company, but GOTECH simply ignored nonconforming work "under the guise of a manufactured job

---

[115] Rec. Doc. No. 22 at 4.
[116] A. Public payroll fraud is committed when:
(1) Any person shall knowingly receive any payment or compensation, or knowingly permit his name to be carried on any employment list or payroll for any payment or compensation from the state, for services not actually rendered by himself, or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or payroll; or
(2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employment list or payroll of his office, the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation.
46305

description."[117]

Costin points to Silvio's deposition testimony that the SSO program was "beyond corrupt."[118] Silvio testified about certain contractors on the SSO project and claimed they are "dirty people" who "will do whatever they have to do to get an inspector fired."[119] Silvio explained that, on projects involving thousands of feet of pipes, the contractors would use 8-foot pipe on projects that only called for 6-foot pipes which resulted in the overpayment to contractors for work outside plan specifications.[120] Costin maintains that, if GOTECH was properly reporting and issuing nonconformance reports on each of these occasions, there would be hundreds of daily reports identifying these fraudulent practices. Costin also claims that, since he requested these nonconformance reports in discovery and they were not produced, the Court should infer that they do not exist, which demonstrates GOTECH's breach of the DPW contract and violation of the law. Costin claims that these failures on the part of GOTECH resulted in breach of contract and public payroll fraud because GOTECH still accepted payment pursuant to the contract while not fulfilling its contractual obligations. Thus, Costin maintains that, although GOTECH claims its sole duty was to observe and report, it "cannot stand idly by in silence and do nothing when it has knowledge that work is being performed in non-conformance with contract plans or specifications in violation of state law."[121]

Costin also contends GOTECH violated the law by engaging in retaliatory workplace harassment for Costin's repeated attempts to report nonconforming work.

---

[117] Rec. Doc. No. 22 at 4-5.
[118] Rec. Doc. No. 22-4 at 3 (Deposition of Silvio, p. 50, lines 12-13).
[119] *Id.* (Deposition of Silvio, p. 50, lines 15-17).
[120] *Id.* at 7-8 (Deposition of Silvio, pp. 61-62).
[121] Rec. Doc. No. 22 at 6-7.
46305

While Costin disputes GOTECH's claim that it always intervened on his behalf in incidents with non-GOTECH employees, Costin further claims that GOTECH failed to address his ongoing harassment by GOTECH's own employees. Costin contends Silvio continuously harassed him by cursing at him and in the way Silvio spoke to him and threatened to let him go.[122] Costin testified that Silvio cursed, slandered, and threatened him for "not shutting [his] mouth about what was going on at Pump Station 275."[123]

GOTECH moves for summary judgment on Costin's whistleblower claim arguing that Costin has not presented summary judgment evidence that GOTECH actually violated a state law. GOTECH maintains that it was hired by the City/Parish to provide inspection services for the SSO Program, and its role was to observe and report. When deficiencies or violations were found, GOTECH's responsibility was to document it, photograph it (if possible), and report it. GOTECH maintains that it has no ability to change what the contractor does, to instruct a contractor to fix a problem, or even to stop a job. Further, it is not within GOTECH's authority to approve or accept nonconforming work. After daily reports are submitted, it is ultimately the responsibility of the contractor – who is not affiliated with GOTECH – to determine how to address any nonconforming work, safety violations, or even violations of law. Thus, GOTECH contends that, notwithstanding the veracity of Costin's allegations, his complaints are simply beyond the scope of GOTECH's role in the field. GOTECH contends it is undisputed that it had no legal or contractual obligation to ensure that nonconforming work or safety violations were remedied.

---

[122] Rec. Doc. No. 22-3 at 9.
[123] *Id.* (Deposition of Costin, p. 202, lines 23-24; p. 203, lines 7-8).
46305

As to Costin's claims that GOTECH asked him to manufacture daily reports and to "dumb down" his reports, GOTECH contends there is no competent summary judgment evidence to establish this claim. GOTECH contends the record reflects that Costin was simply asked to do his job and supply details for two days that he allegedly worked and should have had notes and photographs to refresh his memory. Further, GOTECH claims it only asked Costin to prepare daily reports in a professional manner without including his own personal opinions; there is no evidence that Costin was told to "dumb down" these reports.

The Court finds that Costin has failed to carry his burden of establishing that GOTECH committed actual violations of state law. Costin alleges in his petition that GOTECH violated state law in the following ways: (1) aiding contractors in defrauding Louisiana and DPW Public Words Contracts; (2) suppressing and/or attempting to suppress OSHA safety violations; (3) suppressing and/or attempting to suppress violations of State Public Works Contracts; (4) suppressing and/or attempting to suppress improper construction, installation, or maintenance to various public works; (5) endangering the public by failing to provide proper inspection and/or oversight to public works projects; (6) failing to correct known safety violations which led to the eventual death of Jassiah Clark; and (7) other unlawful acts to be proven at trial.[124]

In large part, Costin refers to alleged violations of law by third parties – not employees of GOTECH. To the extent Costin attempts to attribute the conduct of third parties to GOTECH, any such claims under the whistleblower statute are dismissed as a

---

[124] Rec. Doc. No. 1-1 at 8.

46305

matter of law. Indeed, "Louisiana appellate courts and federal courts agree that the employer, not a mere co-worker or third party, must violate state law."[125]

Further, glaringly absent from these allegations are any references or citations to actual Louisiana laws or statutes that have purportedly been violated. Only in Costin's *Opposition* brief does a single Louisiana statute appear – a claim of Louisiana payroll fraud in violation of La. R.S. 14:138.[126] However, Costin provides no summary judgment evidence of payroll fraud on the part of GOTECH. Costin argues that:

> GOTECH knew it could still be paid under the contract even if it was not fulfilling its duty to issue NCRs and bring documented violations to the attention of the construction manager. It is undisputed that GOTECH intentionally failed to perform its duties under the DPW Contract and was compensated for such in clear violation of the provision of the DPW Contract and state law."[127]

Costin cites to Silvio's deposition testimony where he was asked, "And ultimately, whether you're reporting nonconforming work or not, GoTech is getting paid under whatever contract they have, right?," to which Silvio responded "Right."[128] This is woefully insufficient evidence to establish payroll fraud on the part of GOTECH. First, Costin submits only this page from Silvio's deposition to support this claim. The Court is unable to read the entirety of this line of questioning and understand Silvio's testimony in any context. Second, the Court notes that payment of an employee after a poor job performance or poor work quality does not automatically constitute payroll fraud. Costin's

---

[125] *Cheshire v. Air Methods Corp.*, No. 15-0933, 2016 WL 3029965 at *5 (W.D. La. May 25, 2016)(citing *Fondren v. Greater New Orleans Expressway Comm'n*, 871 So.2d 688, 691 (La. App. 5 Cir. 4/27/04) (citing *Puig v. Greater New Orleans Expressway Commission*, 772 So.2d 842, 845 (La. App. 5 Cir. 10/31/00), *writ denied*, 786 So.2d 731 (La. 3/9/01)); *see also Goulas v. LaGreca*, 945 F.Supp.2d 693, 703 (E.D. La. 2013) (holding that employee who advised that co-worker was using drugs on premises did not have an LWS claim) *aff'd sub nom. Goulas v. LaGreca Serv. Inc.*, 13-30651, 2014 WL 718433 (5th Cir. Feb. 26, 2014).
[126] *See supra* n. 115.
[127] Rec. Doc. No. 22 at 6.
[128] Rec. Doc. No. 22-4 at 9 (Deposition of Silvio, p. 93, lines 4-8).
46305

subjective belief that GOTECH breached its contractual obligations to DPW is neither evidence of an actual state law violation, nor is it evidence of payroll fraud.

As to the OSHA claim, not only has Costin presented no evidence of an actual violation, this claim fails as a matter of law as the Louisiana Whistleblower Statute requires an actual violation of *state* law, not *federal* law. It is well-settled that the Louisiana Whistleblower Statute applies only to violations of state law and does not apply to violations of federal law.[129] As such, Costin has no retaliation claim for such a violation under the Louisiana Whistleblower Statute as a matter of law.

Costin's claims that GOTECH suppressed and/or attempted to suppress violations of State Public Works Contracts, improper construction, installation, or maintenance to various public works, and endangered the public by failing to provide proper inspection and/or oversight to public works projects are unsupported by any evidence in this case. Further, Costin fails to identify a specific state law that has been violated by any allegation and fails to identify or provide any authority for the argument that an alleged breach of contract in this instance amounts to a violation of state law.

The Court has carefully reviewed the contract between GOTECH and the DPW as it relates to the SSO Program. Specifically, the contract provides as follows:

**Limitations of Authority:**

Onsite inspection staff's authority is limited by several stipulations. They may not do the following:

- Inspectors may not authorize deviations from the contract documents (specifications and plans)
- Inspectors may not interfere with the work performed by the

---

[129] *See Diaz v. Superior Energy Services, LLC*, No. 07-2805, 2008 WL 3077071 at * 12 (E.D. La. Aug. 4, 2008)(citing *Beard v. Seacoast Elec., Inc.*, 2006-1244 (La. App. 4 Cir. 1/24/07); 951 So.2d 1168, 1170)).
46305

contractor nor assume responsibility for the performance of the work.

- Inspectors are not to take direction form anyone other than the defined chain of command – Senior Inspector, Lead inspector, and CM
- Inspectors may not advise or direct the contractor's construction means, methods, techniques, sequences, or procedures
- Inspectors are not to advise or direct the Contractor's safety procedures. Should hazards be observed, report conditions to contractor's superintendent and record them in the daily log. If an emergency situation arises, contact the Lead inspector and Project CM
- Inspectors are not to stop the Contractors work.
- Inspectors are not to sign any document as the Contractor's agent including material delivery tickets, labor reports, etc.[130]

Costin claims there are genuine factual disputes as to the meaning of this contract language as it relates to GOTECH's duties and obligations. The Court disagrees. The contract language is unambiguous and clear – GOTECH had no authority under the terms of the contract to perform many of the duties that form the basis of Costin's alleged breach of contract and violation of unidentified state laws. Further, Costin cites no authority supporting his argument that an alleged breach of contract with the City/Parish automatically constitutes a violation of state law.

As to Costin's alleged harassment and violation of workplace labor laws, these allegations are likewise vague, ambiguous, and do not reference any particular state (or federal) law which has been violated. Notably, although Costin alleges harassment throughout his petition, there is no mention of harassment or workplace labor law violations under his whistleblower allegations. Further, there is no cite to any specific state law being violated. The only evidence in the record demonstrating that Costin

---

[130] Rec. Doc. No. 19-4 at 46.
46305

complained to GOTECH about harassment and labor laws is in his August 1, 2014 email wherein Costin writes that GOTECH has gotten away with "prohibited harassment," and he states that "[t]here are labor laws that protect workers from this kind of abuse."[131] This fails to satisfy Costin's burden of showing an *actual* violation of a *particular* state law. Costin's allegations are unsubstantiated and vague without citation to any particular provisions of law. Costin has failed to carry his burden in opposing summary judgment on the Louisiana Whistleblower Act claims, and GOTECH is entitled to summary judgment on these claims.

### C. LUTPA

GOTECH also moves for summary judgment on Costin's state law LUTPA claim. Costin's LUTPA claim includes the identical recitation of violations alleged under his Louisiana Whistleblower claim.[132] In LUTPA, the legislature declared it unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[133] "Because of the broad sweep of this language, 'Louisiana courts determine what is a LUTPA violation on a case-by-case basis.'"[134]

In order to prove a violation of LUTPA, a plaintiff must show: "(1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss."[135] Louisiana courts have consistently held that, in

---

[131] Rec. Doc. No. 19-5 at 43.

[132] *See* Rec. Doc. No. 1-1 at 10.

[133] La. R.S. 51:1405.

[134] *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14), 144 So.3d 1011, 1025 (quoting Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loy. L. Rev. 759, 762 (1996)).

[135] *Rockwell Automation, Inc. v. Montgomery*, Civil Action No. 17-415, 2017 WL 2294687, at *2, 2017 U.S. Dist. LEXIS 80820, at *5-6 (W.D. La. May 24, 2017) (citation omitted).

46305

establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[136]  Consequently, "the range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.[137]  Furthermore, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.[138]

GOTECH contends any claim Costin may have under LUTPA has prescribed as a matter of law.  Because a LUTPA claim must be brought within one year of the time of the last act or transaction giving rise to the claim, GOTECH argues that all of Costin's alleged LUTPA violations occurred prior to November 20, 2014, and any LUTPA claim is time-barred.  Costin again argues that the continuing tort doctrine applies to his LUTPA claim and extended the filing deadline until November 25, 2014, the date of his termination.

A one-year limitations period applies to private actions brought under LUTPA;[139] however, the Louisiana Supreme Court has not yet ruled as to whether the law implicates peremption or prescription.  Nonetheless, Louisiana federal district and state appellate courts have determined that the time for filing a private cause of action under LUTPA is

---

[136] *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633 (La. 4/23/10), 35 So.3d 1053, 1059.
[137] *Id.* at 1060.
[138] *See, e.g.*, *id.* ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.").
[139] *See* La. R.S. 51:1409(E) (private action under LUTPA "shall be prescribed by one year running from the time of the ... act which gave rise to th[e] right of action").  The Court notes that, in May 2018, the Louisiana Legislature amended and reenacted La. R.S. 51:1409(E) to provide that private actions under LUTPA "shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action."
46305

peremptive in nature rather than prescriptive.[140]   Therefore, this Court will apply a

preemptive period for LUTPA claims.  In Louisiana, peremption means that a claim cannot

be suspended or interrupted.[141]   However, the United States Fifth Circuit has found that

there are certain situations where the presence of a continuing violation of LUTPA

extends the time period a party can bring a claim under LUTPA, *i.e.*, a claim under LUTPA

can be suspended.[142]   Nevertheless, the Court need not address whether the continuing

tort doctrine applies to suspend the running of peremption in the present case because

the Court has already found that the continuing tort doctrine does not apply in the present

case as discussed *infra*.[143]   There is no summary judgment evidence before the Court to

create a material issue of fact that Costin's wrongful termination constitutes an unfair or

deceptive trade practice.   Accordingly, GOTECH is entitled to summary judgment on

Costin's LUTPA claim.

### D.  FMLA Retaliation

Costin also asserts a claim of FMLA retaliation. The FMLA entitles eligible

employees to twelve work-weeks of leave in any 12–month period for various qualifying

events, including a "health condition that makes the employee unable to perform the

functions" of his position.[144]   An employer ordinarily must provide returning employees

---

[140] *See Jones v. Herlin*, Civil Action No. 12-1978, 2013 WL 5270547, at *9, (W.D. La. Sep. 17, 2013); *Max Access, Inc. v. Gee Cee Co. of LA*, Civil Action No. 15-1728, 2016 WL 454389, at *5, (E.D. La. Feb. 5, 2016); *Morris v. Sears, Roebuck & Co.*, 99-2772 (La. Ct. App. 4th Cir. 05/31/00), 765 So.2d 419, 422.

[141] *See Glod v. Baker*, 2004-1483 (La. Ct. App. 3rd Cir. 3/23/05), 899 So.2d 642, 649, *writ denied*, 2005-1574 (La. 1/13/06), 920 So.2d 238 ("[T]he third circuit has made a jurisprudential commitment to a strict definition of peremption embodied in the Civil Code and manifested in its consistent decisions barring use of the continuing violation doctrine to suspend peremption.").

[142] *See Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir. 2002).

[143] The Court notes that Costin's LUTPA claims would also fail as a matter of law based on the same lack of evidence present to support his whistleblower claims.

[144] 29 U.S.C. § 2612(a)(1)(D).

46305

with the same position they previously held or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[145] An employer's failure to restore an employee to the same or equivalent position gives rise to an entitlement claim under 29 U.S.C. § 2615(a)(1).[146] "*De minimis*, intangible changes in the employee's position do not, however, violate the FMLA."[147]  The FMLA also "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights."[148]  An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2).  "To prove FMLA retaliation, the employee must demonstrate: '1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'"[149]

Costin contends that, because of the alleged harassment he suffered, he was forced to take FMLA leave, after which GOTECH could no longer directly harass or terminate him.  However, Costin claims GOTECH continued its retaliation against him by modifying his physical job descriptions and removing prior work accommodations.  Thus, when Costin could not report back to work under these physical job requirements, he suffered an adverse employment action when GOTECH terminated him.

---

[145] 29 U.S.C. § 2614(a)(1).
[146] *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).
[147] *Smith v. E. Baton Rouge Parish Sch. Bd.*, 453 F.3d 650, 651 (5th Cir.2006)(citing 29 C.F.R. § 825.215(f)).
[148] *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998).
[149] *Acker v. GM, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (quoting *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 674, 583 (5th Cir. 2006)).
46305

It is undisputed that Costin has satisfied the first two elements of his *prima facie* case: Costin was protected under the FLMA, and he suffered an adverse employment action when he was terminated on November 25, 2014.[150] The issue before the Court is whether GOTECH terminated Costin because he sought protection under the FMLA.

An employee must "show 'there is a causal link' between FMLA-protected activity and the adverse action."[151] Neither the Fifth Circuit, nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies to FMLA retaliation claims.[152] However, "the Supreme Court has held that in order to establish the causal link, temporal proximity, if offered by itself, must be 'very close.'"[153] Here, Costin's FMLA leave expired on November 15, 2014, ten days prior to his termination on November 25, 2014.[154] Ten days is sufficiently close in temporal proximity for Costin to demonstrate a causal link and establish a *prima facie* case of FMLA retaliation.

Summary judgment for a retaliation claim under the FMLA is subject to the *McDonnell Douglas* burden-shifting analysis.[155] Once a *prima facie* case is made, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the employment decision.[156] Here, GOTECH provides testimonial and documentary

---

[150] Rec. Doc. 19-9, pp. 1-2; *see, e.g., Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("It is clear that an adverse employment action occurred here—Royal was fired.").

[151] *Acker*, 853 F.3d at 790 (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d. 327 (5th Cir. 2005)).

[152] *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016)(citations omitted).

[153] *Leal v. BFT, Ltd. P'ship*, 423 F. App'x 476, 479 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (noting that the time periods of three and four months had been found by the appellate courts to be "very close" and holding that a period of twenty moths was not "very close")).

[154] Rec. Doc. 19-9, pp. 1-2.

[155] *Spears v. Louisiana Department of Public Safety and Corrections*, 2 F.Supp. 3d 873, 879-880 (M.D. La. 2014)(citing *Varise v. H & E Healthcare, LLC*, No. 10–666, 2012 WL 5997202 at *2 (M.D.La.11/30/12)).

[156] *Id.* at 880.

46305

evidence that the reason for Costin's termination was his failure to return to work.[157] Dugas testified that GOTECH notified Costin that his FMLA leave had expired on November 15, 2014 and requested that he return to work on November 24, 2014.[158] Costin acknowledged the expiration of his FMLA leave in his November 16, 2014 email to GOTECH: "The 12 weeks of FMLA leave exhausted on Saturday November 15th. What happens to my position and insurance now?"[159] On November 21, 2014, GOTECH responded via email: "Your FMLA leave expired November 15, 2014 . . . . If you do not report to the GOTECH office for work by 8:00 a.m. Monday, November 24, 2014 we will consider you to have abandoned your job and proceed to fill your position."[160] It is undisputed that Costin failed to report for work on November 24, 2014;[161] thus, GOTECH has demonstrated a legitimate, non-retaliatory reason for his termination. Under *McDonnell Douglas*, the burden shifts to Costin to demonstrate either: (1) that the employer's reason is a pretext for discrimination; or (2) that the employer has a discriminatory or retaliatory motive in addition to a legitimate reason, or mixed motives.[162]

Costin argues that GOTECH's reason for termination is pretext for discrimination because his job requirements changed, and the reasonable accommodations previously available to him had been removed.[163] Costin also claims GOTECH knew the changes would cause him to be unable to perform the job for which he would be returning, which was not his regular job.[164]

---

[157] Rec. Doc. 19-3, pp. 42-43.
[158] *Id.*
[159] Rec. Doc. No. 19-9 at 2.
[160] *Id.* at 1.
[161] Rec. Doc. 19-5, p. 75.
[162] *Spears*, 2 F.Supp. 3d at 880 (citing *Richardson,* 434 F.3d at 333).
[163] Rec. Doc. 22, p. 16.
[164] *Id.*
46305

As set forth previously, GOTECH maintains that Dugas created this list "in a good faith attempt to paint a realistic pictures of what may be physically required of a field inspector."[165] Further, GOTECH contends that, after Dr. May was provided with this job description, Dr. May advised GOTECH by letter that Costin was released to work "without any restrictions at all to his previous functions for Field Inspector."[166] GOTECH cites Dr. May's testimony that, as of September 23, 2014, Costin was able to complete these physical requirements.[167]

The Court finds that genuinely disputed fact issues preclude summary judgment on Costin's FMLA claim. Dugas testified that he created this list of job duties for Field Inspectors in response to Dr. May's request and because no Field Inspector job duties had previously been reduced to writing. Dugas testified that the list was "just from, I guess, my experience of field inspectors, this is what you could possibly have to do. Didn't mean you had to do – you were going to do them, but this would probably be whatever physical requirements you may have to – you know what I'm saying?"[168] Dugas further testified that neither Costin nor any other field inspectors had ever seen this list.[169] Additionally, Costin's supervisor Macaluso testified that he disagreed with some of the duties on this list, particularly the requirement to walk two to three miles a day.[170] Macaluso testified that when he saw the list, it "seemed a little ridiculous."[171] As to GOTECH's argument that Dugas made this list in "good faith," that is a credibility

---

[165] Rec. Doc. No. 19-2 at 9.
[166] Rec. Doc. No. 19-8 at 11.
[167] *Id.* at 3-4.
[168] Rec. Doc. No. 22-2 at 6-7 (Deposition of Dugas, p. 204, line 25; p. 205, lines 1-5).
[169] *Id.* at 7.
[170] Rec. Doc. No. 22-13 at 1-2.
[171] *Id.* at 2 (Deposition of Macaluso, p. 78, line 10).

46305

determination that is for the jury, not the Court on summary judgment.[172]

There is also a factual dispute regarding whether these physical requirements were applied to Costin prior to his FMLA leave.  Although Dugas maintains that Costin was only being asked to do the same job he had previously done,[173] Costin maintains that these new requirements went beyond the scope of his physical capabilities and prior medical conditions that were known to GOTECH.  Dr. May testified that, in treating Costin previously, "he had indicated that it was not a real physically demanding position."[174]  Dr. May also testified that he had never really treated Costin in relation to physical problems on the job; rather, the major issues presented were not being able to stay focused and awake on the job.[175]  Dr. May testified that he "didn't really assess [Costin] as far as his physical capacities because that had never been a concern.  I … wasn't aware that there was any major physical demands for this job position."[176] Further, although GOTECH is correct that Dr. May released Costin to work after having been provided the new job requirements, Dr. May testified that he had no recollection of seeing those particular physical requirements, and it was possible that the fax from GOTECH had not made it into Costin's medical chart prior to Dr. May's release.[177]  This testimony calls into question whether Costin was released by Dr. May with knowledge of the "new" physical job requirements.

---

[172] See Painter v. Suire, No.  2014 WL 3897660 at *2 (M.D. La. Aug. 8, 2014)(Conclusory statements that a party acted in good faith "do not amount to evidentiary support for consideration on a summary judgment motion.").
[173] See Rec. Doc. No. 19-5 at 74.
[174] Rec. Doc. No. 22-15 at 1 (Deposition of Dr. May, p. 62, lines 3-4).
[175] Id. at 1-2.
[176] Id. at 2 (Deposition of Dr. May, p. 63, lines 6-10).
[177] Id.

46305

There is also an issue of fact whether prior accommodations were made for Costin based on his health conditions. While GOTECH claims Costin never requested any accommodations, Costin's November 22, 2014 email references past accommodations made by GOTECH with specificity to time, place, and manner.[178] It is the role of the trier of fact, not this Court, to resolve this factual dispute.[179]

Viewing the record in the light most favorable to Costin, these factual disputes preclude summary judgment. The Court simply cannot weigh the evidence or make credibility determinations on summary judgment. It is within the province of the jury to determine whether the alleged changes to Costin's job description were *de minimus* and in good faith. GOTECH's *Motion for Summary Judgment* is DENIED as to Costin's FMLA claim.

---

[178] Rec. Doc. No. 22-11 at 1-2.

[179] Costin also refers to several instances of alleged accommodations made by GOTECH based on his prior medical conditions and surgeries in his Response to Interrogatory No. 17. Rec. Doc. No. 22-16. GOTECH argues that this "self-serving" response does not create a genuine issue of material fact. Rec. Doc. No. 26 at 8. Assuming that Costin's Answers to Interrogatories were submitted in accordance with F.R.C.P. 33(b)(3) and made under oath, the answer constitutes competent summary judgment evidence. However, based on the limited exhibit submitted by Costin, the Court cannot ascertain whether this answer was submitted under oath. In any event, there are other material factual disputes which preclude summary judgment on Costin's FMLA claim.

46305

## III.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[180] by GOTECH is GRANTED in part and DENIED in part.  Summary judgment is GRANTED in favor of GOTECH on Plaintiff's state law claims under the Louisiana Whistleblower Act and LUTPA, and these claims are dismissed with prejudice.  Summary judgment is DENIED as to Plaintiff's FMLA claim.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 17, 2018</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[180] Rec. Doc. No. 19.

46305